# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ADAM STREETER, an individual,    )
                               )
        Plaintiff,            )
                               )
    v.                      )     Case No. 3:14-cv-00555-wmc
                               )
ELI LILLY AND COMPANY, a corporation;  )
                               )
        Defendant.       )

---

## DEFENDANT ELI LILLY AND COMPANY'S ANSWER
## TO FIRST CORRECTED AMENDED COMPLAINT

---

In response to the First Corrected Amended Complaint ("Complaint") filed in this action by Plaintiff, Adam Streeter ("Streeter"), Defendant Eli Lilly and Company ("Lilly") answers Streeter's allegations in the numbered paragraphs of the Complaint.

## INTRODUCTION

1.     This is a civil action for products liability alleging personal injuries and damages, including serious withdrawal symptoms, suffered by Plaintiff Adam Streeter as a direct and proximate result of his ingestion and cessation of the prescription drug, Cymbalta (duloxetine), which is manufactured, marketed, and sold by Defendant Eli Lilly and Company (hereinafter, "Defendant" or "Lilly"). This civil action alleges that Plaintiff's personal injuries and damages were suffered as a result of Lilly's failure to adequately warn physicians and consumers about the frequency, severity, and/or duration of symptoms associated with discontinuation of Cymbalta (throughout, interchangeably "discontinuation" or "withdrawal" "symptoms" or "syndrome"), and for failure to design Cymbalta in a way that would allow Plaintiff to safely and effectively taper from taking Cymbalta. Plaintiff's claims sound in negligence, strict product liability, fraud, concealment, and breach of warranty.

**ANSWER:**    Lilly admits that it manufactures, markets, and sells Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions and other labeled risks and benefits of the medications. Lilly lacks knowledge or information sufficient to

form a belief as to the truth or accuracy of the remaining allegations in Paragraph 1 and therefore denies the same.

## PARTIES

2.    Plaintiff Adam Streeter (hereinafter, "Plaintiff") is, and at all times relevant to this Complaint was, a citizen of the State of Minnesota, County of Hennepin from at least Summer 2006 until Fall 2009, and a citizen of the State of Wisconsin, County of Marathon from Fall 2009 to the present.

**ANSWER:**    Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 2 and therefore denies the same.

3.    Defendant Eli Lilly and Company is, and at all times relevant to this Complaint was, an Indiana corporation with its headquarters in Indianapolis, Indiana. Lilly is a pharmaceutical company involved in the research, development, testing, manufacture, production, promotion, distribution, marketing and sale of numerous pharmaceutical products, including Cymbalta, a prescription antidepressant drug.

**ANSWER:**    Lilly admits that it is an Indiana corporation with its principal place of business in Indianapolis, Indiana.  Lilly also admits that it is engaged in the business of research, development, testing, manufacturing, producing, promoting, distributing, marketing, and selling prescription medications, including but not limited to Cymbalta®.  Lilly denies the remaining allegations in Paragraph 3.

## JURISDICTION AND VENUE

4.    This Court has personal jurisdiction over Lilly insofar as Lilly is authorized and licensed to conduct business in Wisconsin, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

**ANSWER:**    Lilly admits that it is authorized to conduct business and does conduct business in Wisconsin, as alleged in Paragraph 4.  Lilly denies the remaining allegations on the basis that they purport to allege conclusions of law and thus do not require a response.

5.    Furthermore, Lilly has caused tortious injury by acts and omissions in this judicial district while regularly doing and soliciting business, engaging in a persistent course of conduct,

and deriving substantial revenue from goods used or consumed and services rendered in this judicial district

**ANSWER:** Paragraph 5 of the First Corrected Amended Complaint purports to allege conclusions of law and thus does not require a response and on that basis Lilly denies the allegations.

6. This Court has subject matter jurisdiction in the form of diversity jurisdiction, pursuant to 28 U.S.C.A. § 1332, in that there is a complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

**ANSWER:** Lilly admits that this Court has subject matter jurisdiction in the form of diversity jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. § 1391.

**ANSWER:** Paragraph 7 purports to allege conclusions of law and thus does not require a response and on that basis Lilly denies the allegations.

## FACTUAL ALLEGATIONS

8. Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion. From 2004 through 2014, a substantial portion of Lilly's revenue was derived from its drug Cymbalta, whose 2009 annual sales exceeded $3 billion domestically and $5 billion worldwide.

**ANSWER:** Paragraph 8 is vague and ambiguous as to content and context and on that basis, Lilly denies the allegations.

9. Lilly has enjoyed considerable financial success from manufacturing and selling prescription drugs for the treatment of clinical depression, including the popular antidepressant Prozac (generically known as fluoxetine). Lilly launched Prozac in 1988 touting it as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI"). SSRIs are a class of antidepressant drugs that were promoted as increasing the brain chemical serotonin in the synaptic clefts between the neurons in the brain. It has been theorized that reduced levels of serotonin cause depression; however, recent studies have undermined this theory. Prozac became extremely popular in the 1990s and was the top-selling antidepressant of its kind. Prozac's patent expired in August 2001.

**ANSWER:** Lilly admits that it researched, tested, developed, manufactured, labeled, marketed and sold Prozac®, for use only upon a prescription by a licensed physician, in

3

accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication. Lilly admits that Prozac® is in the class of prescription medications known as selective serotonin reuptake inhibitors ("SSRIs"), but denies the relevance of the information. Lilly admits that the United States Food and Drug Administration ("FDA") approved Prozac® in 1987 as a safe and effective medication for the treatment of Major Depressive Disorder ("MDD"). Lilly admits that Prozac®'s patent expired in August 2001. Allegations pertaining to SSRIs as a class of antidepressants are vague and ambiguous as to time, content, and context and on that basis, Lilly denies the allegations. Lilly denies the remaining allegations in Paragraph 9.

10.     In 2001, Lilly needed to fill the void left behind by Prozac's patent expiration, and so it sought approval by the Food and Drug Administration's ("FDA") for its next antidepressant, Cymbalta. Unlike Prozac, Cymbalta is a "Serotonin-Norepinephrine Reuptake Inhibitor" ("SNRI"), which Lilly promoted as increasing the brain chemicals serotonin and norepinephrine in the synaptic clefts between the neurons in the brain. Lilly and other SNRI manufacturers admit that the precise mechanism of action is not clear, however, they have promoted the drugs by stating that higher levels of these neurotransmitters somehow improve and elevate mood.

**ANSWER:**     Lilly admits that Cymbalta® is a serotonin norepinephrine reuptake inhibitor ("SNRI"). Allegations pertaining to statements made about SNRIs are vague and ambiguous as to time, content, and context and on that basis, Lilly denies the allegations. Lilly denies the remaining allegations in Paragraph 10.

11.     In 2003, the FDA initially rejected Lilly's application to approve Cymbalta due to certain violations of good manufacturing practices and the risk of liver toxicity apparent in the drug's safety profile.

**ANSWER:**     Lilly denies the allegations in Paragraph 11.

12.     Eventually, in 2004, manufacturing issues were resolved and the FDA approved Cymbalta with a liver toxicity warning included in the prescribing information. The drug was approved for Major Depressive Disorder ("MDD"). In 2007, the FDA approved Cymbalta for treatment of Generalized Anxiety Disorder ("GAD") and in 2008 for treatment of fibromyalgia.

4

**ANSWER:**   Lilly admits that the FDA approved Cymbalta® in 2004 for the treatment of Major Depressive Disorder ("MDD").  Lilly further admits that the FDA approved Cymbalta® for the treatment of Generalized Anxiety Disorder ("GAD") in 2007 and fibromyalgia in 2008. Lilly denies the remaining factual allegations in Paragraph 12.

13.     Since the FDA's initial approval of Cymbalta in 2004, Lilly has aggressively marketed the drug to the public and the medical community, spending hundreds of millions of dollars each year on advertising and promotion. Lilly has promoted Cymbalta directly to consumers, including Plaintiff, through all major media channels, including internet, print and television. In addition, Lilly has promoted Cymbalta to the medical community by utilizing its well-organized army of sales representatives to personally visit physicians and health care professionals to distribute free drug samples and promotional literature. Lilly further promoted Cymbalta through advertisements in medical journals and presenting talks and exhibits at medical conferences.

**ANSWER:**   Lilly admits that the FDA approved Cymbalta® in 2004.  Lilly also admits that it researched, tested, developed, manufactured, labeled, marketed, and sold Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication.  Lilly further admits that it promoted Cymbalta® to prescribers through its sales representatives.  The allegations pertaining to the promotion of Cymbalta® utilizing Lilly sales representatives are vague and ambiguous as to time, content, and context and on that basis, Lilly denies the allegations.  Lilly denies the remaining allegations in Paragraph 13.

14.     Lilly's promotional campaigns have continuously failed to provide adequate instructions to users and health care professionals for stopping Cymbalta and have failed to include adequate warnings that fully and accurately inform users and health care professionals about the frequency, severity, and/or duration of Cymbalta withdrawal and that Cymbalta is not designed in such a way that would easily allow for a gradual tapering off of the drug.

**ANSWER:**   Lilly denies the allegations in Paragraph 14.

15.     Withdrawal symptoms are not connected to a patient's underlying condition but rather are the body's physical reactions to the drug leaving the system. While many SSRIs and SNRIs can cause withdrawal symptoms, the initiation, frequency, and severity of withdrawal

5

symptoms correlate to a drug's half-life. The half-life of a drug is the time it takes for the concentration of the drug in the body to be reduced by half. This information is one of the basic pharmacokinetic properties of a drug and is known to researchers developing the drug. Cymbalta's half-life is approximately 12 hours, which is one of the shortest half-lives of any of the SSRIs and SNRIs. In contrast, the half-life of Prozac is seven days. The shorter the half-life, the faster the body eliminates the drug from the system, thus creating a higher risk of withdrawal symptoms. Because Cymbalta's half-life is less than one day and Cymbalta is generally administered once daily, it is possible for users of Cymbalta to experience withdrawal symptoms after simply forgetting to take one dose. This also means that users cannot safely taper off of the drug by reducing their frequency of dosing (from once every 24 hours to every 48 hours, etc.); the short half-life results in withdrawal-inducing low levels of the drug too quickly.

**ANSWER:**    Lilly admits that the half-life of a drug is the time it takes for the

concentration of the drug in the body to be reduced by one-half.  Lilly further admits that, since

2004, the Cymbalta label has stated that the half-life of Cymbalta is approximately 12 hours.

Lilly denies the remaining allegations in Paragraph 15 .

16.    Despite Lilly's awareness of Cymbalta's half-life and the correlation between a short half-life and withdrawal risk, Lilly did not include any cross-references between the Pharmacokinetics section of the label and either the Precautions section or the Dosage and Use section. In fact, rather than drawing attention to the potential consequences of Cymbalta's extremely short half-life, Lilly misleadingly referenced all other SSRIs and SNRIs, as if Cymbalta could be expected to pose a similar risk of withdrawal as all other drugs of its class generally:

>    During marketing of other SSRIs and SNRIs (Serotonin and Norepinephrine Reuptake Inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional liability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

[2004 Cymbalta Label.]  The extremely short half-life of Cymbalta should have alerted Lilly to the fact that the risk of Cymbalta withdrawal would be more frequent than that experienced with other SSRIs and SNRIs.  Further, Lilly should have recognized that doses in increments of less than 20 mg—the smallest dose available—would be necessary to allow users to gradually taper off Cymbalta to avoid or mitigate withdrawal symptoms.

4830-9474-7684.

**ANSWER:**    Lilly admits that Paragraph 16 contains an accurate partial quotation from the 2004 Cymbalta label.  Lilly denies the remaining allegations in Paragraph 16 as characterized by Plaintiff.

17.    Lilly should have been aware of the significance of antidepressant withdrawal, because Lilly had previously researched and publicized the issue in connection with its antidepressant Prozac. Because Prozac has an extremely long half-life relative to other antidepressants, the length of time it takes for a person's body to fully eliminate Prozac from the system provides a built-in gradual tapering of sorts, so that withdrawal symptoms from Prozac are relatively infrequent. Prozac's main competitors in the 1990s, Zoloft and Paxil, had shorter half-lives, and Lilly engineered a campaign to differentiate Prozac from its competitors on this basis, funding clinical studies of antidepressant withdrawal and coining the term "antidepressant discontinuation syndrome."

**ANSWER:**    Lilly admits that the risk of discontinuation symptoms from antidepressant therapy was a well understood clinical phenomenon for decades prior to Cymbalta's approval and that the need for tapering off of antidepressant therapy was also well understood.  Lilly denies the remaining allegations in Paragraph 17.

18.    Researchers, including Lilly's own consultants, have postulated that as SSRIs and SNRIs block the reuptake of serotonin and norepinephrine, structural changes in the brain occur such that production of these neurotransmitters is reduced. These changes in the brain's architecture may contribute to withdrawal symptoms, as a patient is, upon cessation of the drug, left not only with the absence of the drug but also structural changes in the brain that remain for some time even after the drug has fully washed out of the person's system. Because of the short half-life of Cymbalta, the brain has even less time to adjust to the cessation of Cymbalta treatment. Despite Lilly's knowledge of this phenomenon, Lilly did not include in Cymbalta's label or promotional materials any information regarding the increased risk of withdrawal due to structural changes in the brain exacerbated by Cymbalta's short half-life.

**ANSWER:**    Paragraph 18 is vague and ambiguous as to context, and Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 18 and therefore denies the same.

19.    In 2004, when Cymbalta was introduced in the United States market, Lilly's physician labeling (United States Package Insert, or "USPI") for Cymbalta stated the following with respect to discontinuation or withdrawal symptoms:

> Discontinuation of Treatment with Cymbalta – Discontinuation symptoms have been systematically evaluated in patients taking

Cymbalta. Following abrupt discontinuation in placebo-controlled clinical trials of up to 9-weeks duration, the following symptoms occurred at a rate **greater than or equal to 2%** and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, paresthesia, vomiting, irritability, and nightmare.

(emphasis added). Cymbalta's label also provided the following instructions for stopping Cymbalta:

A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate.

*Id.*

**ANSWER:**    Lilly admits that the Cymbalta® label has included a warning on discontinuation symptoms since Cymbalta® was approved by the FDA in 2004. Lilly admits that the Cymbalta® label contained the following "WARNINGS AND PRECAUTIONS" section regarding "Discontinuation of Treatment with Cymbalta®":

Discontinuation symptoms have been systematically evaluated in patients taking Cymbalta. Following abrupt discontinuation in placebo-controlled clinical trials of up to 9-weeks duration, the following symptoms occurred at a rate greater than or equal to 2% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, paresthesia, vomiting, irritability, and nightmare.

During marketing of other SSRIs and SNRIs (serotonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

Patients should be monitored for these symptoms when discontinuing treatment with Cymbalta. A gradual reduction in the

dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate . . . .

20.     In 2007, Lilly changed the discontinuation precaution section of the USPI to state that symptoms occurred in Cymbalta users at a rate of "**greater than or equal to 1%**" (emphasis added).

**ANSWER:**     Lilly admits that the version of the USPI revised on May 10, 2007

contained the following warning on discontinuation symptoms:

> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt discontinuation in placebo-controlled clinical trials, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness; nausea; headache; paresthesia; vomiting; irritability; nightmares; insomnia; diarrhea; anxiety; hyperhidrosis; and vertigo.

> During marketing of other SSRIs and SNRIs (sertonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

> Patients should be monitored for these symptoms when discontinuing treatment with Cymbalta. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate . . . .

21.     By the time of the 2011 iteration of the USPI, Lilly had changed the language to state that these symptoms occurred at "**1% or greater**" (emphasis added).

**ANSWER:** Lilly admits that the version of the USPI revised on March 4, 2011 contained the following warning on discontinuation symptoms, but denies that the change referenced in Paragraph 21 was introduced in 2011:

> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at 1% or greater and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, paresthesia, fatigue, vomiting, irritability, insomnia, diarrhea, anxiety, and hyperhidrosis.

> During marketing of other SSRIs and SNRIs (sertonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.

> Patients should be monitored for these symptoms when discontinuing treatment with Cymbalta. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate . . . .

22. In addition to using the euphemistic term "discontinuation" in both its USPI and patient Medication Guide to describe Cymbalta's withdrawal symptoms, the label did not accurately reflect that a significant percentage of Cymbalta users suffered from withdrawal symptoms. Rather, the warnings suggested that Cymbalta withdrawal was rare, occurring at a rate of approximately only 1% or 2%.

**ANSWER:** Lilly denies the allegations in Paragraph 22.

23. To the contrary, according to a January 2005 article published in the Journal of Affective Disorders, Lilly's Cymbalta clinical trials showed that, at a minimum, between 44.3% and 50% of Cymbalta patients suffered from "discontinuation" side effects. David G. Perahia et al., Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder, 89 JOURNAL OF AFFECTIVE DISORDERS 207 (2005). The

10

article also noted that the withdrawal symptom data compiled during Lilly's clinical trials was gathered from "spontaneous reports" of symptoms (patients volunteering symptoms) and not using the more accurate "symptom checklist." The authors acknowledged that use of a symptom checklist would likely produce even higher incidence rates of withdrawal symptoms.

**ANSWER:**    The article cited speaks for itself, and Lilly denies any inaccurate

characterization or interpretation of the article to which Plaintiff refers in Paragraph 23 of the

First Corrected Amended Complaint when read in context and in its entirety.  Lilly denies the

remaining allegations in Paragraph 23.

24.    Lilly has never disclosed this critical data in its USPI or its patient Medication Guide in the United States. In comparison, Lilly's European label disclosed that withdrawal symptoms occur in approximately 45% of patients upon discontinuation of Cymbalta. Instead of disclosing the incidence rate for discontinuation or withdrawal syndrome as an aggregate constellation of symptoms in the United States, Lilly's USPI has always provided merely a "frequency threshold" (or 1% or 2%) for individual symptoms, misleadingly suggesting that Cymbalta withdrawal syndrome is rare or infrequent.

**ANSWER:**    The USPI, Medication Guide, and European labels for Cymbalta speak for

themselves, and Lilly denies any inaccurate characterization or interpretation of them in

Paragraph 24.  Lilly denies the remaining allegations in Paragraph 24.

25.    Moreover, Lilly's clinical trials showed that, overall, between 9.6% and 17.2% of Cymbalta users suffered severe withdrawal symptoms, yet Lilly has never informed United States physicians or patients of that risk.

**ANSWER:**    Paragraph 25 is vague and ambiguous as to time, content, and context and

on that basis, Lilly denies the allegations.  Lilly denies the remaining allegations in Paragraph 25.

26.    Cymbalta's withdrawal side effects include, among other things, headaches, dizziness, nausea, fatigue, diarrhea, paresthesia, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations, seizures and vertigo. When patients try to stop taking Cymbalta, the side effects can be severe enough to force them to start taking Cymbalta again, not to treat their underlying condition, but simply to stop the withdrawal symptoms. Patients thus become prisoners to Cymbalta, and Lilly financially benefits by having a legion of physically dependent, long-term users of Cymbalta.

**ANSWER:**    Lilly denies the allegations in Paragraph 26.

27.    Notwithstanding Lilly's knowledge of the high rate of withdrawal symptoms in patients stopping Cymbalta, Lilly did not provide adequate instructions to users and physicians

for stopping Cymbalta or warn users and physicians about the frequency, severity, and/or duration of the withdrawal symptoms.

**ANSWER:**    Lilly denies the allegations in Paragraph 27.

28.    Instead, in its product labeling, marketing and advertising, and in information made available to consumers and physicians, Lilly reported a far lower risk, downplayed any difference in the withdrawal risk for Cymbalta as compared to other similar antidepressants, and affirmatively misled the consuming patient population and mischaracterized the drug's risk profile.

**ANSWER:**    Lilly denies the allegations in Paragraph 28.

29.    Lilly's misleading direct-to-consumer promotional campaigns and its failure to adequately warn users and physicians about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms have paid off financially for Lilly. Prior to its patent expiration in December 2013, Cymbalta became a "blockbuster" drug with over $3 billion dollars in annual U.S. sales. In the past few years, Cymbalta has been the most profitable or second most profitable drug in Lilly's product line. Lilly had the knowledge, the means and the duty to provide adequate warnings regarding Cymbalta's common and severe withdrawal and dependency side effects as well as a duty to honestly portray the safety of Cymbalta. Lilly could have relayed these warnings through the same means it utilized to advertise its products, which included but are not limited to its labeling, "Dear Doctor letters," advertisements and sales representatives.

**ANSWER:**    The allegations pertaining to the sales and profitability of Cymbalta[®] are vague and ambiguous as to time, content, and context and on that basis, Lilly denies the allegations.  The remaining allegations in Paragraph 29 purport to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly further denies it had a duty to warn consumers directly of alleged risks associated with the use of Cymbalta[®].

Lilly denies any remaining allegations in Paragraph 29.

30.    Additionally, although Lilly recommended "gradual reduction," it provided no information as to what that might mean for patients taking Cymbalta and their physicians. Lilly did not, for example, provide any information regarding the recommended time period, as it did in its European Cymbalta label, which stated, "It is therefore advised that duloxetine should be gradually tapered when discontinuing treatment over a period of no less than 2 weeks[.]" 2014 Cymbalta European Medicines Agency Label (emphasis added). Lilly also did not, for example, recommend dosing increments to follow when reducing the dose.

12

**ANSWER:** Paragraph 30 is vague and ambiguous as to context and on that basis, Lilly denies the allegations. Lilly further responds that the USPI and European label speak for themselves, and Lilly denies any inaccurate characterization or interpretation of their contents. Lilly denies the remaining allegations in Paragraph 30.

31. And, even though Lilly advised that the reduction in dose may be done at "a more gradual rate" if "intolerable" symptoms occur, Lilly failed to warn users and physicians that the design of Cymbalta makes it impossible for "a more gradual rate" to be achieved other than 10 mg increments and that no "gradual reduction" can take place below 20 mg, due to the design of Cymbalta capsules.

**ANSWER:** Lilly admits that at all relevant times, the USPI has instructed physicians that a "gradual reduction in dose" is recommended for Cymbalta discontinuation. Lilly denies the remaining allegations in Paragraph 31.

32. As Lilly was fully aware of the issue of antidepressant withdrawal and of Cymbalta's elevated withdrawal risk, Lilly should not only have included a strong warning to physicians and patients, but it should have also originally designed the drug in such a way that would easily allow for a gradual tapering off of the drug. Other SSRIs and SNRIs are available as scored tablets that can be halved and quartered with relative ease, or are available in liquid form which can be measured and dispensed in small increments. In contrast, Cymbalta is manufactured as a delayed-release capsule filled with tiny beads. The smallest dose in which Cymbalta is available is 20 mg. Cymbalta's label and Medication Guide instruct physicians and patients that the capsule "should be swallowed whole and should not be chewed or crushed, nor should the capsule be opened and its contents be sprinkled on food or mixed with liquids." Thus, unlike other SSRIs and SNRIs, the design of Cymbalta's delivery and dosing system prevent its smallest available dose of 20 mg from being incrementally reduced by users and physicians to help avoid or mitigate withdrawal symptoms. As a result, Cymbalta's design raised additional withdrawal risk that was not warned about.

**ANSWER:** Lilly denies the allegations in Paragraph 32.

33. Falsely reassured by the misleading and deceptive manner in which Lilly reported Cymbalta's withdrawal risk, physicians, including Plaintiff's physician, have prescribed, and continue to prescribe, Cymbalta to patients without adequate instructions for stopping Cymbalta and without adequate warnings that fully and accurately inform them about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms and that the ability to gradually taper was restricted because of Cymbalta's design.

**ANSWER:** Lilly denies the allegations in Paragraph 33.

34.     On or around August 10, 2006, Plaintiff was prescribed Cymbalta by his physician, for treatment of depression and fibromyalgia. Fibromyalgia is a long-term condition of chronic muscle, joint, and tendon pain throughout the body.

**ANSWER:**     Lilly admits that fibromyalgia can be a long-term condition with

symptoms that may include, but are not limited to, chronic muscle, joint, and tendon pain

throughout the body.  Lilly lacks knowledge or information sufficient to form a belief as to the

truth or accuracy of the allegations in Paragraph 34 pertaining to Plaintiff's Cymbalta®

prescription and therefore denies the same.  Lilly denies the remaining allegations in Paragraph

34.

35.     On or around January 17, 2012 Plaintiff was concerned with the effects he experienced if he was late or missed a dose of Cymbalta. Under the care and supervision of his physician, Plaintiff elected to taper off of Cymbalta.

**ANSWER:**     Lilly lacks knowledge or information sufficient to form a belief as to the

truth or accuracy of the allegations in Paragraph 35 and therefore denies the same.

36.     Plaintiff reduced his Cymbalta doses down to the lowest available dose of 20 mg, after which he stopped taking Cymbalta altogether. While reducing his dose and upon completely stopping Cymbalta, Plaintiff experienced severe and dangerous withdrawal symptoms. By way of example, Plaintiff experienced brain and body zaps, dizziness, nausea, vomiting, muscle spasms and pain, diarrhea, sweating, tremors, heart palpations, and insomnia. In addition, Plaintiff's experience of withdrawal affected his ability to work.

**ANSWER:**     Lilly lacks knowledge or information sufficient to form a belief as to the

truth or accuracy of the allegations in Paragraph 36 and therefore denies the same.

37.     At all times relevant, Lilly knew or should have known that Cymbalta was in a defective condition and was and is inherently dangerous and unsafe when used in the manner instructed and provided for by Lilly.

**ANSWER:**     Lilly denies the allegations in Paragraph 37.

38.     At all times relevant, Lilly knew or should have known of the significantly increased risk of withdrawal symptoms posed by Cymbalta, including their severity and duration, and yet failed to adequately warn about said risks.

**ANSWER:**     Lilly denies the allegations in Paragraph 38.

4830-9474-7684.

39.     At all times relevant, Lilly engaged in a willful, wanton, and reckless conduct, including its defective design of Cymbalta, and its failure to fully and accurately warn about the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms and that the ability to gradually taper was restricted because of Cymbalta's design, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff and his physicians.

**ANSWER:**     Lilly denies the allegations in Paragraph 39.

40.     Plaintiff's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its: failure to warn users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms; provide adequate instructions to users and physicians for stopping Cymbalta; failure to warn that Cymbalta's design severely restricts the ability to taper; and design of the Cymbalta capsules (when first submitted to the FDA) in a way that did not allow for a more gradual taper (reduction in dosage).

**ANSWER:**     Paragraph 40 purports to allege conclusions of law and on that basis Lilly

denies the allegations.  Moreover, Lilly lacks knowledge or information sufficient to form a

belief as to the truth or accuracy of the allegations in Paragraph 40 relating to Plaintiff's use of

Cymbalta® and therefore denies the same.

41.     If Lilly had adequately, accurately and properly warned about the withdrawal risk associated with Cymbalta, including the high risk of experiencing withdrawal symptoms and their frequency and severity, Plaintiff's physician would not have prescribed the drug to Plaintiff; Plaintiff would have refused the drug; and/or Plaintiff's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

**ANSWER:**     Lilly denies the allegations in Paragraph 41.

42.     As a direct and proximate result of taking Cymbalta, Plaintiff suffered compensable injuries, including but not limited to the following:

      a.     physical, emotional, and psychological injuries;

      b.     past and future pain and suffering;

      c.     past and future mental anguish;

      d.     loss of enjoyment of life; and

      e.     past and future medical and related expenses.

4830-9474-7684.

**ANSWER:**     Paragraph 42(a) - (e) purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations relating to Plaintiff's alleged injuries and therefore denies the same.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

43.     Lilly reincorporates and realleges its Responses to Paragraphs 1-42 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

44.     Lilly owed to Plaintiff, and to other consumers and patients, a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the drug Cymbalta, including the duty to assure that the product carries adequate warnings and that the product is not unreasonably dangerous as designed.

**ANSWER:**     Paragraph 44 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly further denies it had a duty to warn consumers directly of alleged risks associated with the use of Cymbalta®.

45.     Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

   a.     Failed to adequately warn of and affirmatively misrepresented the frequency, severity and/or duration of Cymbalta's withdrawal symptoms;

   b.     Failed to adequately warn that Cymbalta could cause patients to become physically dependent on Cymbalta;

   c.     Failed to warn patients and health care professionals that the design of Cymbalta capsules together with the available dosage strengths restrict the ability to taper because the lowest dosage strength available is 20 mg; tapering down to 20 mg can only be done in 10 mg increments; and doses are in capsules that are not intended to be opened;

   d.     Misled users by suggesting that Cymbalta withdrawal is rare;

   e.     Failed to adequately warn that the risks of Cymbalta withdrawal symptoms exceed the risk of withdrawal symptoms posed by alternative treatment options;

16

f.   Negligently designed Cymbalta in a way that it knew would cause withdrawal and physical dependency;

g.   Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed, material facts regarding the safety of Cymbalta to the Plaintiff, the public, and the medical community;

h.   Failed to comply with its post-manufacturing duty to warn that Cymbalta was being promoted, distributed and prescribed without adequate warnings of the true frequency, severity, and/or duration of potential withdrawal symptoms; and

i.   Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful, wanton, and intentional disregard for Plaintiff's rights and safety.

**ANSWER:**   Paragraph 45 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly denies the remaining factual allegations in Paragraph 45.

46.   Despite the fact that Lilly knew, or should have known, that Cymbalta could cause frequent and severe withdrawal symptoms, Lilly continued to market Cymbalta to consumers, including Plaintiff, without adequate warnings about the frequency, severity, and/or duration of the withdrawal symptoms, without information about how to safely taper off the drug, and without warning that the ability to gradually taper was restricted because of Cymbalta's design. Lilly knew, or should have known, that Cymbalta users would suffer foreseeable injuries as a result of its failure to exercise ordinary care, as described above. Lilly knew or should have known that the Cymbalta designed, formulated, manufactured, and/or supplied by it was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

**ANSWER:**   Paragraph 46 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly further denies the remaining factual allegations in Paragraph 46.

47.   Had Lilly provided instructions for the proper method for stopping Cymbalta and/or adequate warnings regarding the frequency and severity of the withdrawal and dependency risks and that the ability to gradually taper was restricted because of Cymbalta's design, Plaintiff's injuries would have been avoided.

**ANSWER:** Lilly denies the allegations in Paragraph 47. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 47 relating to Plaintiff's alleged injuries and therefore denies the same.

48. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

**ANSWER:** Paragraph 48 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 48 relating to Plaintiff's alleged injuries and therefore denies the same.

49. WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:** Lilly denies the allegations in Paragraph 49, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 49. Lilly denies that Plaintiff is entitled to any such relief.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY – DESIGN DEFECT

50. Lilly reincorporates and realleges its Responses to Paragraphs 1-49 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

51. At all times relevant, Lilly was engaged in the business of selling Cymbalta in the State of Wisconsin.

**ANSWER:** Lilly admits that it has sold Cymbalta® in Wisconsin, as alleged in Paragraph 51. Paragraph 51 is vague and ambiguous as to time and on that basis, Lilly denies the remaining allegations.

52. The Cymbalta manufactured, marketed, promoted and sold by Lilly was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

**ANSWER:** Lilly admits that it researched, tested, developed, manufactured, labeled, marketed, promoted, and sold Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication. Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in Paragraph 52 and therefore denies the same.

53. Lilly introduced a product into the stream of commerce that is defective in design, in that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by Lilly, and Lilly's omission of the alternative design renders the product unreasonably dangerous. The harm of Cymbalta's design outweighs and benefit derived therefrom. The unreasonably dangerous nature of Cymbalta caused serious harm to Plaintiff.

**ANSWER:** Lilly denies the allegations in Paragraph 53.

54. Lilly manufactured, marketed, promoted and sold a product that was merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

**ANSWER:** Lilly admits that it researched, tested, developed, manufactured, labeled, marketed, promoted, and sold Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication. The remaining allegations pertaining to Lilly's "product" are vague and ambiguous as to time, content, and context, and on that basis, Lilly denies the allegations. Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations

19

and legal conclusions in Paragraph 54 relating to Plaintiff's alleged injuries from Cymbalta[®] and

therefore denies the same.  Lilly denies the remaining allegations in Paragraph 54.

55.     Lilly placed Cymbalta into the stream of commerce with wanton and reckless disregard for public safety. Cymbalta's elevated risk of withdrawal was not obvious, nor was it common knowledge.

**ANSWER:**     Lilly denies the allegations in Paragraph 55.

56.     Despite evidence that Cymbalta is dangerous and likely to place users at serious risk to their health, Lilly failed to disclose and warn of the health hazards and risks associated with Cymbalta and, in fact, acted to deceived the medical community and public at large, including all potential users of Cymbalta, by promoting it as safe.

**ANSWER:**     Lilly denies the allegations in Paragraph 56.

57.     Lilly knew or should have known that physicians and other healthcare providers began commonly prescribing Cymbalta as a safe product despite the fact that the design of Cymbalta pills, as delayed-release capsules of beads at 20, 30 and 60 mg doses only, along with the instruction to swallow them whole, prevents users from being able to gradually taper off Cymbalta beyond the 20 mg dose or at increments more gradual than 10 mg. Cymbalta users such as Plaintiff are thus unable to avoid the danger of Lilly's design upon cessation of treatment. Moreover, Lilly knew that the likelihood of experiencing withdrawal symptoms (such that gradual tapering would be required) is significant.

**ANSWER:**     Lilly denies the allegations in Paragraph 57.

58.     Lilly could have originally employed a reasonable alternative design prior to FDA approval that would have allowed users to taper gradually and thus lessen the risk of injury. The risk of harm inherent in Lilly's design of Cymbalta capsules outweighs the utility of its design. There are other antidepressant medications and similar drugs on the market with safer alternative designs, with respect to patients' and physicians' ability to gradually decrease the dosage, such as scored tablets that can more easily be halved and quartered. *See Estate of Cassel v. Alza Corp.*, No. 12-cv-771-WMC, 2014 WL 856023 (Mar. 5, 2014 W.D. Wis.) (dismissing drug manufacturer's motions for summary judgment and judgment as a matter of law where defendant offered no evidence that the FDA would have prohibited drug manufacturer from submitting a safer and reasonable alternative design in compliance with state law).

**ANSWER:**     The case cited speaks for itself, and Lilly denies any inaccurate

characterization or interpretation of the case to which Plaintiff refer in Paragraph 58.  Lilly

denies the remaining allegations in Paragraph 58.

59.     As a direct and proximate result of Lilly's widespread promotional activity, physicians commonly prescribe Cymbalta as safe.

**ANSWER:** Paragraph 59 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, the allegations in Paragraph 59 are vague and ambiguous as to time, content, and context, and on that basis, Lilly denies the allegations.

60. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

**ANSWER:** Paragraph 60 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 60 relating to Plaintiff's alleged injuries and therefore denies the same.

61. WHEREFORE, Plaintiff demands judgment against Lilly for compensatory and statutory damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:** Lilly denies the allegations in Paragraph 61, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 61. Lilly denies that Plaintiff is entitled to any such relief.

### THIRD CAUSE OF ACTION
### STRICT PRODUCT LIABILITY – FAILURE TO WARN

62. Lilly reincorporates and realleges its Responses to Paragraphs 1-61 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

63. Lilly researched, tested, developed, designed, licensed, manufactured, packaged, inspected, labeled, distributed, sold, marketed, promoted and/or introduced Cymbalta into the stream of commerce and in the course of same, directly advertised and/or marketed Cymbalta to consumers or persons responsible for consumers, and therefore, had a duty to warn Plaintiff and

Plaintiff's physicians of the risks associated with stopping Cymbalta, which Lilly knew or should have known are inherent in the use of Cymbalta.

**ANSWER:** Lilly admits that it researched, tested, developed, manufactured, labeled, distributed, marketed, promoted, and sold Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication. Lilly further admits that it has utilized direct-to-consumer advertising for Cymbalta®, in conformity with applicable rules and regulations. Lilly objects to the term "persons responsible for consumers" as vague and ambiguous and on that basis denies the allegation. Paragraph 63 further purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Lilly denies the remaining allegations in Paragraph 63.

64.     Lilly had a duty to warn users and physicians fully and accurately of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms, which it knew or should have known, can be caused by the discontinuation of Cymbalta and/or are associated with Cymbalta discontinuation, including brain and body zaps, dizziness, nausea, vomiting, muscle spasms and pain, diarrhea, sweating, tremors, heart palpations, and insomnia.

**ANSWER:** Paragraph 64 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.

65.     Furthermore, Lilly had a duty to provide users and physicians with adequate instructions for stopping Cymbalta. Lilly failed to provide users and physicians with instructions or guidelines regarding a tapering regimen. Moreover, Lilly had a duty to warn users and physicians that the design of Cymbalta severely restricts the ability to gradually taper off the drug.

**ANSWER:** Paragraph 65 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.

66.     Cymbalta was under the exclusive control of Lilly and was not accompanied by appropriate warnings regarding the frequency, severity, and duration of possible adverse side effects and complications associated with the discontinuation of Cymbalta. The information given to consumers and physicians did not accurately reflect the risk, incidence, scope or severity

22

of such withdrawal symptoms to the consumer as compared to other similar products available in the market, which possessed lower risk of such symptoms. The promotional activities of Lilly further diluted and/or minimized any warnings that were provided with the product.

**ANSWER:**     Plaintiff's allegation pertaining to "exclusive control" is vague and

ambiguous as to time, content, and context and on that basis, Lilly denies the allegation.  Lilly

denies the remaining allegations in Paragraph 66.

67.     Lilly downplayed the serious and dangerous risk of withdrawal of Cymbalta in order to foster and heighten sales of the product.

**ANSWER:**     Lilly denies the allegations in Paragraph 67.

68.     Cymbalta was defective and unreasonably dangerous when it left the possession of Lilly in that it contained instructions insufficient to fully inform users and physicians on how to stop Cymbalta and warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it, including but not limited to severe, debilitating withdrawal symptoms and the inability to effectively taper off the medication due to its design. Even though Lilly knew or should have known the risks associated with Cymbalta, it failed to provide adequate warnings.

**ANSWER:**     Paragraph 68 purports to allege conclusions of law that do not require a

response and on that basis Lilly denies the allegations.  Lilly denies the remaining allegations in

Paragraph 68.

69.     The foreseeable risks of withdrawal-related harm posed by Cymbalta could have been reduced or avoided by the provision of reasonable instructions or warnings by Lilly. Lilly's omission of reasonable instructions or warnings rendered Cymbalta not reasonably safe.

**ANSWER:**     Paragraph 69 purports to allege conclusions of law that do not require a

response and on that basis Lilly denies the allegations.  Lilly denies the remaining allegations in

Paragraph 69.

70.     Plaintiff used Cymbalta as intended or in a reasonably foreseeable manner.

**ANSWER:**     Lilly lacks knowledge or information sufficient to form a belief as to the

truth or accuracy of the allegations in Paragraph 70 relating to Plaintiff's alleged use of

Cymbalta[®] and therefore denies the same.

4830-9474-7684.

71.     Plaintiff could not have discovered any defect in the drug through the exercise of reasonable care.

**ANSWER:**     Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations relating to Plaintiff or Plaintiff's physician's ability to discover any alleged "defect in the drug" and therefore denies the same. Lilly denies any remaining allegations in Paragraph 71.

72.     Lilly, as manufacturer of Cymbalta and other pharmaceutical prescription drugs, is held to the level of knowledge of an expert in the field, and further, Lilly had knowledge of the dangerous risks of Cymbalta.

**ANSWER:**     Lilly admits that it is engaged in the business of researching, developing, testing, manufacturing, promoting, distributing, marketing, and selling prescription medications, including but not limited to Cymbalta®. Paragraph 72 purports to allege conclusions of law that do not require a response and on that basis, Lilly denies the allegations. Lilly denies the remaining factual allegations in Paragraph 72.

73.     Plaintiff did not have the same knowledge as Lilly and no adequate warning was communicated to his physicians.

**ANSWER:**     Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 73 relating to Plaintiff's knowledge and therefore denies the same. Lilly denies the remaining allegations in Paragraph 73.

74.     Lilly had a continuing duty to warn consumers and the medical community, including Plaintiff and his physicians, of the dangers associated with Cymbalta. By negligently and wantonly failing to adequately warn of the dangers associated with the use of Cymbalta, Lilly breached its duty.

**ANSWER:**     Paragraph 74 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Lilly denies the remaining factual allegations in Paragraph 74.

75.     Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market and sell the drug without providing adequate warnings

24

or instructions concerning the use of the drug in order to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harms posed by the drug.

**ANSWER:**     Lilly denies the allegations in Paragraph 75.

76.     In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including Plaintiff.

**ANSWER:**     Lilly denies the allegations in Paragraph 76.

77.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

**ANSWER:**     Paragraph 77 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 77 relating to Plaintiff's alleged injuries and therefore denies the same.

78.     WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:**     Lilly denies the allegations in Paragraph 78, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 78.  Lilly denies that Plaintiff is entitled to any such relief.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY

79.     Lilly reincorporates and realleges its Responses to Paragraphs 1-78 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

80. Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

**ANSWER:** Paragraph 80 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.

81. Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta, which was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Lilly.

**ANSWER:** Lilly admits that it researched, tested, developed, manufactured, labeled, marketed, promoted, and sold Cymbalta®, for use only upon a prescription by a licensed physician, in accordance with applicable laws and regulations, and for its approved indications with FDA-approved warnings, precautions, and other labeled risks and benefits of the medication. Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in Paragraph 81 and therefore denies the same.

82. Plaintiff used Cymbalta as prescribed and in a manner normally intended, recommended, promoted, and marketed by Lilly.

**ANSWER:** Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 82 and therefore denies the same.

83. Cymbalta failed to perform safely when used by ordinary consumers, including Plaintiff, when used as intended and in a reasonably foreseeable manner.

**ANSWER:** Lilly denies the allegations in Paragraph 83.

84. Cymbalta was defective in its design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design and formulation.

**ANSWER:** Lilly denies the allegations in Paragraph 84.

85. Cymbalta was defective in design or formulation in that it posed a greater likelihood of injury compared to other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

**ANSWER:** Lilly denies the allegations in Paragraph 85.

26

86. Cymbalta was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with, nor was otherwise accompanied by, warnings adequate to alert consumers, including Plaintiff and his physicians, of the risks described herein, including the significant increased risk of withdrawal symptoms and the inability to effectively taper off the medication due to its design.

**ANSWER:** Lilly denies the allegations in Paragraph 86.

87. Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market, and sell Cymbalta in order to maximize sales and profits at the expense of the public health and safety. By so acting, Lilly acted with a conscious and deliberate disregard of the foreseeable harm caused by Cymbalta.

**ANSWER:** Lilly denies the allegations in Paragraph 87.

88. Plaintiff could not, through the exercise of reasonable care, have discovered Cymbalta's defects or perceived the dangers posed by the drug.

**ANSWER:** Lilly denies the allegations in Paragraph 88 concerning any alleged defect in Cymbalta[®]'s design and lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 88 concerning Plaintiff's state of mind.

89. Lilly's conduct as described herein was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Lilly and deter it from similar conduct in the future.

**ANSWER:** Lilly denies the allegations in Paragraph 89.

90. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

**ANSWER:** Paragraph 90 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 90 relating to Plaintiff's alleged injuries and therefore denies the same.

27

91.    WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:**    Lilly denies the allegations in Paragraph 91, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 91.  Lilly denies that Plaintiff is entitled to any such relief.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

92.    Lilly reincorporates and realleges its Responses to Paragraphs 1-91 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

93.    Lilly owed a duty to Plaintiff and his physicians to convey and communicate truthful and accurate information about Cymbalta.

**ANSWER:**    Paragraph 93 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.

94.    Lilly represented to Plaintiff, his physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal side effects were no different, no worse and no more frequent, than other similar products in the market. These representations were, in fact, false.

**ANSWER:**    Lilly denies the allegations in Paragraph 94.

95.    Lilly was negligent in failing to exercise due care in making the aforesaid representations.

**ANSWER:**    Paragraph 95 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly denies the remaining factual allegations.

96.    Lilly had a pecuniary interest in making said representations, which were made in order to expand sales and increase revenue Cymbalta.

**ANSWER:**    Lilly denies the allegations in Paragraph 96.

97.    At the time said representations were made by Lilly, at the time Plaintiff and his physicians took the actions herein alleged, Plaintiff and his physicians were ignorant of the

falsity of Lilly's representations and reasonably believed them to be true. In justifiable reliance upon said representations, Plaintiff and his physicians were induced to, and did, use Cymbalta and attempt to discontinue from Cymbalta. If Plaintiff and his physicians had known the actual facts, Plaintiff's injuries would have been avoided because Plaintiff's physician would not have prescribed the drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

**ANSWER:** Lilly denies the allegations in Paragraph 97. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 97 relating to Plaintiff and/or his physicians' alleged actions, knowledge, beliefs, and injuries and therefore denies the same.

98. The reliance of Plaintiff and his physicians upon Lilly's representations was justified because the representations were made by individuals and entities that appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

**ANSWER:** Paragraph 98 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 98 and therefore denies the same.

99. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered pecuniary losses including but not limited to past and future medical and related expenses.

**ANSWER:** Paragraph 99 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 99 relating to Plaintiff's alleged injuries and therefore denies the same.

100. WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:**   Lilly denies the allegations in Paragraph 100, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 100. Lilly denies that Plaintiff is entitled to any such relief.

## SIXTH CAUSE OF ACTION
## FRAUD

101.   Lilly reincorporates and realleges its Responses to Paragraphs 1-100 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

102.   Lilly committed fraud by actively concealing material adverse information that was in its possession from its labeling and marketing of Cymbalta, including but not limited to, concealing the true frequency, severity and duration of Cymbalta's withdrawal side effects, and by falsely representing the withdrawal risk associated with Cymbalta, including the failure to inform that effective tapering was not possible due to the design of its dosage and delivery system.

**ANSWER:**   Lilly denies the allegations in Paragraph 102.

103.   Lilly represented to Plaintiff, his physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal side effects were no different, and no worse and no more frequent, than other similar products in the market. These representations were, in fact, false and material.

**ANSWER:**   Lilly denies the factual allegations in Paragraph 103. To the extent the Paragraph 103 purports to allege conclusions of law that do not require a response, Lilly further denies those allegations.

104.   The specific acts of Lilly include the following:

    a.    Fraudulently suggesting that the withdrawal risk is rare, or occurred at a rate of approximately one (1) percent, when the overall rate of patients experiencing withdrawal, according to Lilly's own clinical trials, is high (at least 44.3% to 50%). Furthermore, an analysis of the data from Lilly's clinical trials reveals, with statistically significant results, that in comparison to stopping a placebo, stopping Cymbalta elevated the risk of specific withdrawal symptoms as much as 23-fold (i.e., nausea 23-fold, dizziness 17-fold, paresthesia 11-fold, irritability 9-fold, nightmares 8-fold, headaches 7-fold, and vomiting 4-fold);

    b.    Fraudulently omitting material information in its labeling and marketing concerning the severity of Cymbalta withdrawal including the fact that, in

Lilly's clinical trials, between 9.6% and 17.2% suffered severe withdrawal (approximately 50% suffered moderate withdrawal);

c.     Fraudulently omitting material information in its labeling and marketing concerning the duration of Cymbalta withdrawal. In fact, more than 50% of patients in the Cymbalta clinical trials continued to suffer from withdrawal symptoms two weeks after coming off the drug. Lilly did not monitor withdrawal beyond two weeks. Lilly was well aware that withdrawal symptoms could be protracted. For instance, the Cymbalta Summary of Product Characteristics" (SmPC) in Europe stated that, "in some individuals [withdrawal symptoms] may be prolonged (2-3 months or more)." The Practice Guideline for the Treatment of Patients With Major Depressive Disorder, Third Edition, published in 2010 (in which at least three Lilly consultants were on the working group and review panel) states under "Discontinuation syndrome" that "some patients do experience more protracted discontinuation syndromes, particularly those treated with paroxetine [Paxil]" and "as with SSRIs, abrupt discontinuation of SNRIs should be avoided whenever possible. Discontinuation symptoms, which are sometimes protracted, are more likely to occur with venlafaxine [Effexor] (and, by implication devenlafaxine [Pristiq]) than duloxetine [Cymbalta] (100) and may necessitate a slower downward titration regimen or change to fluoxetine." Given that Cymbalta's half-life falls between Effexor's and Paxil's – Effexor having the shortest, Cymbalta the second and Paxil the third – the Guideline is artfully worded;

d.     Lilly obscured Cymbalta's true withdrawal risks by deflecting attention away from the Cymbalta-specific clinical trial data showing a clear and significant risk and focusing instead on other SSRIs and SNRIs. For instance, Lilly's label stated "During marketing of other SSRIs and SNRIs ... there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt ..." Lilly's use of "spontaneous" reports from "other SSRIs or SNRIs" is misleading given that approximately 40% to 50% of patients in Lilly's own clinical trials of Cymbalta reported adverse events. In using this language, Lilly misleadingly suggests that the withdrawal risks associated with other SSRIs and SNRIs are worse than Cymbalta's risks, which is the opposite of the truth – Cymbalta is one of the worst.

e.     Lilly obscured Cymbalta's true withdrawal risks by omitting any mention of the fact that the design of its delivery system made effective tapering off of it impossible due to its extremely short half life.

**ANSWER:**     Lilly denies the allegations in Paragraph 104 (a) – (e).

105. Lilly made the aforesaid representations knowingly and/or with reckless disregard for their truth or falsity.

**ANSWER:**    Lilly denies the allegations in Paragraph 105.

106. Lilly made the aforesaid representations with the intent that Plaintiff and his physicians act upon said representations.

**ANSWER:**    Lilly denies the allegations in Paragraph 106.

107. At the time said representations were made by Lilly, at the time Plaintiff and his physicians took the actions herein alleged, Plaintiff and his physicians were ignorant of the falsity of Lilly's representations and reasonably believed them to be true. In justifiable reliance upon said representations, Plaintiff and his physicians were induced to, and did, use Cymbalta and attempt to discontinue from Cymbalta. If Plaintiff and his physicians had known the actual facts, Plaintiff's injuries would have avoided because either Plaintiff's physician would not have prescribed the drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

**ANSWER:**    Paragraph 107 purports to allege conclusions of law that do not require a

response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or

information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph

107 and therefore denies the same.

108. The reliance of Plaintiff and his physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

**ANSWER:**    Paragraph 108 purports to allege conclusions of law that do not require a

response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or

information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph

108 and therefore denies the same.

109. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

4830-9474-7684.

**ANSWER:** Paragraph 109 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 109 relating to Plaintiff's alleged injuries and therefore denies the same.

110. WHEREFORE, Plaintiff demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**ANSWER:** Lilly denies the allegations in Paragraph 110, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 110. Lilly denies that Plaintiff is entitled to any such relief.

### SEVENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

111. Lilly reincorporates and realleges its Responses to Paragraphs 1-110 of Plaintiff's First Corrected Amended Complaint as if fully set forth herein.

112. As described herein, Plaintiff suffered injuries as a direct and proximate result of his use and discontinuation of Cymbalta.

**ANSWER:** Paragraph 112 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations. Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 112 relating to Plaintiff's alleged injuries or Plaintiff's alleged "use and discontinuation" of Cymbalta® and therefore denies the same.

113. At the time of Plaintiff's use of Cymbalta and resulting injuries, the Cymbalta he was taking was in essentially the same condition as when it left the control and possession of Lilly.

**ANSWER:** Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 113 and therefore denies the same.

33

114.   At all times relevant, the Cymbalta received and used by Plaintiff was not fit for the ordinary purposes for which it is intended to be used in that, *inter alia*, it posed a higher risk of withdrawal symptoms – of greater duration and severity – than other similar products available in the market.

**ANSWER:**   Paragraph 114 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Lilly denies the remaining factual allegations.

115.   Plaintiff's injuries were due to the fact that Cymbalta was in a defective condition, as described herein, rendering it unreasonably dangerous to him.

**ANSWER:**   Paragraph 115 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 115 relating to Plaintiff's injuries and therefore denies the same.

116.   As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

**ANSWER:**   Paragraph 116 purports to allege conclusions of law that do not require a response and on that basis Lilly denies the allegations.  Moreover, Lilly lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in Paragraph 116 relating to Plaintiff's alleged injuries and therefore denies the same.

117.   WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

4830-9474-7684.

**ANSWER:**     Lilly denies the allegations in Paragraph 117, except that Lilly admits only that Plaintiff seeks the relief set forth in Paragraph 117.  Lilly denies that Plaintiff is entitled to any such relief.

Lilly denies each and every allegation in Plaintiff's First Corrected Amended Complaint not specifically admitted herein.

## PRAYER FOR RELIEF

Lilly denies the allegations in this section of Plaintiff's First Corrected Amended Complaint, except that Lilly admits only that Plaintiff seek the relief set forth in this section. Lilly denies that Plaintiff is entitled to any relief whatsoever.

## DEMAND FOR JURY TRIAL

This section of Plaintiff's First Corrected Amended Complaint does not assert any allegation requiring a response.  To the extent a response is deemed necessary, Lilly admits that Plaintiff request a trial by jury.

## GENERAL DENIAL AND DEFENSES

Discovery and investigation may reveal that any one or more of the following defenses should be available to Lilly in this matter.  Lilly, therefore, asserts said defenses in order to preserve the right to assert them. Upon completion of discovery, and if the facts warrant, Lilly may withdraw any of these defenses as may be appropriate.  Further, Lilly reserves the right to amend its Answer to assert additional defenses, cross-claims, counterclaims, and other claims and defenses as discovery proceeds.  Further answering and by way of additional defense, Lilly states the following:

4830-9474-7684.

## FIRST DEFENSE

One or more claims asserted or raised in the First Corrected Amended Complaint is barred by the applicable statute of limitations and is otherwise untimely.

## SECOND DEFENSE

The First Corrected Amended Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Each and every claim asserted or raised in the First Corrected Amended Complaint is barred by the doctrines of estoppel, waiver or statutory and regulatory compliance.

## FOURTH DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the First Corrected Amended Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening or superseding cause or causes.

## FIFTH DEFENSE

To the extent that Plaintiff assert claims based upon an alleged failure by Lilly to warn Plaintiff directly of alleged dangers associated with the use of Cymbalta®, such claims are barred under the learned intermediary doctrine because Lilly has discharged its duty to warn in its warnings to the prescribing physician.

## SIXTH DEFENSE

To the extent that Plaintiff asserts claims based on Lilly's adherence to and compliance with applicable state laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

## SEVENTH DEFENSE

Plaintiff has not sustained an ascertainable loss of property or money.

4830-9474-7684.

## EIGHTH DEFENSE

Any liability that might otherwise be imposed upon this Defendant is barred or subject to reduction by application of Wis. Stat. § 895.045.

## NINTH DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the First Corrected Amended Complaint, such injuries or losses were only sustained after Plaintiff knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any medicine or pharmaceutical preparation manufactured or distributed by Lilly or other manufacturer.

## TENTH DEFENSE

If Plaintiff have sustained injuries or losses as alleged in the First Corrected Amended Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Lilly and over whom Lilly had not control and for whom Lilly may not be held accountable.

## ELEVENTH DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the First Corrected Amended Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of Cymbalta®.

## TWELFTH DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the First Corrected Amended Complaint, such injuries or losses resulted from Plaintiff's pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, idiosyncratic reactions, subsequent medical conditions or natural course of conditions for which this Defendant is not responsible.

4830-9474-7684.

## THIRTEENTH DEFENSE

To the extent that Plaintiff relies upon any theory of breach of warranty, such claims are also barred for lack of timely notice of breach and/or lack of privity.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff did not rely on any act, omission, or representation made by Lilly.

## FIFTEENTH DEFENSE

To the extent that Plaintiff seeks punitive damages for the conduct which allegedly caused the injuries asserted in the First Corrected Amended Complaint, such an award would, if granted, violate Lilly's state and federal rights.

## SIXTEENTH DEFENSE

No act or omission of Lilly was willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

## SEVENTEENTH DEFENSE

Plaintiff have not suffered any actual injury or damages.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part because Lilly provided legally adequate "directions or warnings" as to the use of Cymbalta® and any other medicine or pharmaceutical preparation Plaintiff alleges to have taken within the meaning of Comment j to Section 402A of the RESTATEMENT OF (SECOND) OF TORTS.

## NINETEENTH DEFENSE

Plaintiff's claims are barred under Section 4, *et seq.*, of the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY.

4830-9474-7684.

## TWENTIETH DEFENSE

Plaintiff's claims are barred under comment f to Section 6 of the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY.

## TWENTY-FIRST DEFENSE

There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended function of Cymbalta®. Plaintiff's causes of action are barred in whole or in part by their failure to assert a safer design for Cymbalta®.

## TWENTY-SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by failure to mitigate damages.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred in whole or in part because Lilly's conduct conforms with medical knowledge.

## TWENTY-FOURTH DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recover for strict liability because Plaintiff cannot state claims founded in strict liability because, among other things, comments j and k to Section 402A of the RESTATEMENT (SECOND) OF TORTS relegates Plaintiff's claims to a negligence cause of action.

## TWENTY-FIFTH DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recover because if the product involved was unsafe, which Lilly denies, then it was unavoidably unsafe as defined in the RESTATEMENT OF TORTS. The apparent benefits of the product exceeded any apparent risk given the scientific knowledge available when the product was marketed.

4830-9474-7684.

## TWENTY-SIXTH DEFENSE

Lilly's advertisement and labeling with respect to the products which are the subject matter of this action were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States and Wisconsin Constitutions.

## TWENTY-SEVENTH DEFENSE

The public interest in the benefit and availability of the product which is the subject matter of this action precludes liability for risks, if any, resulting from any activities undertaken by Defendant, which were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's claims, if it is determined there is a risk inherent in the product which is the subject matter of this action, then such risk, if any, is outweighed by the benefit of the product.

## TWENTY-EIGHTH DEFENSE

Lilly made no warranties of any kind, express or implied, including any alleged implied warranty of merchantability or any representations of any nature whatsoever to the Plaintiff.

## TWENTY-NINTH DEFENSE

At all times relevant herein, any product which is the subject matter of this action manufactured and distributed by Lilly in any state in the United States was manufactured and distributed in a reasonable and prudent manner based upon available medical and scientific knowledge and further was processed and distributed in accordance with and pursuant to all applicable regulations of the FDA.

## THIRTIETH DEFENSE

With respect to each and every purported cause of action, the acts of Lilly were at all times done in good faith and without malice.

4830-9474-7684.

### THIRTY-FIRST DEFENSE

To the extent there were any risks associated with the use of the product which is the subject matter of this action which Lilly knew or should have known and which gave rise to a duty to warn, Lilly at all times discharged such duty through appropriate and adequate warnings in accordance with federal and state law.

### THIRTY-SECOND DEFENSE

Plaintiff's claims against Lilly are barred because Plaintiff's treating physicians fully informed Plaintiff of the risks associated with the use of Cymbalta®.  Any informed consent and/or release given by Plaintiff is pleaded as an affirmative defense.

### THIRTY-THIRD DEFENSE

To the extent Plaintiff's claims are based on alleged misrepresentations made to the FDA, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2000).

### THIRTY-FOURTH DEFENSE

Plaintiff's claims for pre-judgment and post-judgment interest are limited by Wis. Stat. § 807.01(4); Wis. Stat. § 814.04(4); and Wis. Stat. § 815.05(8).

### THIRTY-FIFTH DEFENSE

Plaintiff's damages claims are barred by the economic loss doctrine.

### THIRTY-SIXTH DEFENSE

Plaintiff's claims of fraud are barred by reason of the First Corrected Amended Complaint's failure to allege the factual circumstances constituting the alleged fraud with particularity.

4830-9474-7684.

## THIRTY-SEVENTH DEFENSE

Lilly fully asserts Wis. Stat. § 895.047(3)(b) and states that Cymbalta[®] complied in
material respects with relevant standards, conditions, and specifications adopted or approved by
the federal government that were applicable to the product at the time of manufacture and that
governed the product risk that allegedly caused harm.

## THIRTY-EIGHTH DEFENSE

Plaintiff's claims may be barred by failure to join indispensable parties.

## THIRTY-NINTH DEFENSE

Any claims relating to alleged communications with regulatory agencies of the U.S.
government are barred in whole or in part by operation of Lilly's First Amendment right to
petition the government (the *Noerr-Pennington* Doctrine).

## FORTIETH DEFENSE

To the extent Plaintiff asserts demand for punitive damages, Lilly specifically
incorporates by reference any and all standards of limitations regarding the determination and/or
enforceability of punitive damages awards that arose in the decisions of *BMW of No. America v.
Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S.
424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003); and *Exxon
Shipping Co. v. Baker*, No. 07-219, 2008 U.S. LEXIS 5263 (U.S. June 25, 2008) and their
progeny as well as other similar cases under both federal and state law.

## FORTY-FIRST DEFENSE

Any claim for punitive damages is limited by Wis. Stat. § 895.043(3), which requires
proof "that the defendant acted maliciously toward the plaintiff or in an intentional disregard of
the rights of the plaintiff."

## FORTY-SECOND DEFENSE

To the extent that Plaintiff asserts a claim for punitive damages, that claim is in contravention of the rights of Lilly under the following constitutional provisions:

a.      Plaintiff's claim for punitive damages violates, and is therefore barred by, the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and the analogous provisions of the Wisconsin Constitution, on grounds including the following:

i.      the procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the analogous provisions of the Wisconsin Constitution;

ii.     the procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts, and thus violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the analogous provisions of the Wisconsin Constitution;

iii.    the procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes upon the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the analogous provisions of the Wisconsin Constitution;

iv.     the procedures pursuant to which punitive damages are awarded permit the imposition of excessive fines in violation of the Eighth Amendment of the United States Constitution, and the analogous provisions of the Wisconsin Constitution;

v.      the award of punitive damages to Plaintiff in this action would constitute a deprivation of property without due process of law; and

43

vi.      the procedures pursuant to which punitive damages are awarded permit the imposition of an excessive fine and penalty.

**FORTY-THIRD DEFENSE**

Any claim for punitive damages is limited by Wis. Stat §895.043(6) to two times the amount of compensatory damages or $200,000.00, whichever is greater.  Lilly asserts all other defenses and limitations on punitive damages contained in Wis. Stat §895.043.

**FORTY-FOURTH DEFENSE**

The determination of the amount of punitive damages, if any, should be bifurcated from the remaining issues pursuant to Wis. Stat. § 805.05(2) and *Russell v. Wisconsin Mut. Ins. Co.*, 214 Wis. 2d 591, 571 N.W.2d 924 (Wis. Ct. App. 1997).

**FORTY-FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Cymbalta[®] was designed, manufactured, distributed, marketed, and labeled with proper warnings, information, cautions, and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.  Lilly invokes all state of the art defenses applicable to Plaintiff's claims, including the state of the art applicable to the industry in question, medicine, medical science, and all others, alleging that it discharged, according to law and due care, each and every duty which Plaintiff may have been owed.

Inasmuch as the First Corrected Amended Complaint does not describe the alleged underlying claims with sufficient particularity to enable Lilly to determine all of its legal, contractual, and equitable rights, Lilly reserves the right to amend and/or supplement the averments of its Answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery.

Lilly will rely on all defenses that may become available during discovery or trial.

44

WHEREFORE, Lilly respectfully demands judgment dismissing the First Corrected Amended Complaint with prejudice and awarding Lilly its reasonable costs and disbursements, including reasonable attorneys' fees, together with such and other and further relief that the court may deem just and proper.

## JURY DEMAND

Lilly demands a trial by jury as to all issues triable.

Dated: June 15, 2015

Respectfully submitted,

*/s/ Megan Stelljes*
Naikang Tsao, WI Bar No. 1036747
Megan R. Stelljes, WI Bar No. 1092714
Foley & Lardner LLP
150 East Gilman Street
Post Office Box 1497
Madison, WI 53701-1497
ntsao@foley.com
mstelljes@foley.com
Telephone:     608.257.5035
Facsimile:     608.258.4258

Michael Xavier Imbroscio, SBN 445474,
admitted *pro hac vice*
Phyllis Alene Jones, SBN 983154,
admitted *pro hac vice*
Covington & Burling LLP
One City Center
850 Tenth Street NW
Washington, DC 20001-4956
mimbroscio@cov.com
pajones@cov.com
Telephone: 202.662.6000
Facsimile: 202.662.6291

*Attorneys for Defendant Eli Lilly and Company*

4830-9474-7684.